May it please the court, my name is Kate Foss and I represent the appellant, Dr. Jeri Hassman. It's Haas? I said Hass but it's Haas? Hassman. Hassman? Yes. Okay, all right. Dr. Hassman is here to seek justice after 11 years without an active DEA registration. This case is a little bit different from your standard DEA case. Here, Dr. Hassman wasn't addicted to drugs, she wasn't giving drugs to her friends, she wasn't forging prescriptions, she wasn't trading drugs for sexual favors. She was trying to treat chronic pain patients, routinely acknowledged as the most difficult kind of patients to treat. Admittedly and personally. Did she feel, did she feel, did she give prescriptions of relatives to relatives? No, Your Honor. Did she know that relatives were using prescriptions of relatives who were deceased? Here, when Dr. Hassman received evidence. No, does the record show that? Yes or no? There, in some cases, the records show that. So when you say you're here to seek justice for her, you've got to ignore the fact that there was some basis for the, for the ruling, don't you? Don't we, if we go that way? I'm sorry, Your Honor. The record also shows that in those instances, Dr. Hassman talked to her patients and counseled them and recommended that they not do so in the future. It also. Is that the usual practice? The usual practice here is when you're dealing with a chronic pain patient. Is the usual practice to let relatives use prescriptions of deceased relatives? No, Your Honor, and that's why Dr. Hassman. Did she know it? Once she learned that, she counseled those patients and told them that they were not allowed to do that. In other instances, she fired patients from her practice. But regardless of an indiscretion by these patients, she's still seeing patients who have real pain. Now, as opposed to this, the DEA is ignoring the wide variety of evidence that's in Dr. Hassman's favor. Well, just a minute before we get to that. It seems to me that your whole argument is my evidence was better than their evidence. My evidence is just exactly what you should have bought, and instead you bought some other evidence. So I wanted you to focus, before you even get to that, what should a reviewing court, when should a reviewing court set aside a decision of the agency in this situation? What's the standard that I use? Well, Your Honor, even if a record is supported by substantial evidence, it can nonetheless be arbitrary and capricious if it failed to consider. I understand, but then what is the standard that I use? Don't I use an arbitrary and capricious standard then?  Or abuse of discretion or not otherwise in accordance with law. Isn't that my standard? That's correct. Now, in applying that standard, what things do I consider? Do I consider what the Congress said I should consider, what factors they say I should consider?  The five factors in making the determination, correct? Yes, Your Honor. And do I also consider whether they considered an important aspect of the problem? Yes, Your Honor. Do I also consider whether they offered an explanation running counter to the evidence? Yes, Your Honor. Do I consider whether it's implausible what they said? Yes. And if it isn't any of those, then I can't undo what they did, correct? Well, here, it also ---- Answer my question. Yes or no? If it doesn't run counter to all of those things, then I have no way to undo what they did, right? If the DA failed to consider ---- Why don't you answer my question? I gave you the factors. I told you what the DEA has got to do. And the only time I can go around that is when I have some implausible idea by the DEA. Isn't that correct? There have been ---- Is that yes or no? No. No? I can substitute my own judgment on that? No, Your Honor. But where the DEA has failed to consider the entire weight of the record, including evidence that is supposed to be ---- Where does it say they have to consider the entire weight of the record? Your Honor, I ---- Case. I can find that for you. I mean, as I understood it, the DEA said factors 2 and 4 established a prima facie case. And what they were really saying there is the applicant's relevant evidence and the compliance with relevant law, the failure to comply with the law, and then shifted it to you to, at that point, demonstrate that your client had accepted responsibility and did not commit misconduct in the future. Your Honor, in Lakeland Bus Lines, which is quoting Universal Camera Corp., that the agency cannot find substantial evidence merely on the basis of evidence which in and of itself justified the decision without taking into account contradictory evidence or from which conflicting inferences could be drawn. Here, what you're talking about, even if this prima facie case has been made, the DEA still failed to consider evidence under the fifth factor and failed to consider the substantial evidence of Dr. Haskin's rehabilitation and her acceptance of responsibility, which was not only noted by the ALJ. Well, maybe we ought to look at the response, what happened as to the shifting of the burden evidence. You would agree with me that the fact that the agency chose to attribute little weight to evidence does not make the agency an error, correct? Your Honor, in for some of the Do you agree with that or don't you? I mean, the relative weight the agency gives to evidence is really not something I can undo. In some instances, the DEA stated that it gave little weight to evidence, but in others it failed to consider that evidence whatsoever. In Beno v. Shalala, this Court stated that a court should not infer consideration just because it was raised and that stating a factor was considered is not a substitute for considering it. And that's what I see that happened here. When I read this record, it seems to me that your client submitted excuses or claims that she did nothing wrong, but I failed to find any place in there where she took responsibility. Your Honor, there's I saw her say she was fooled by cunning clients. I saw her say all kinds of excuses and claims that she didn't do anything wrong, but I would like you to point me in the record where she said, I take responsibility for what happened. In several cases, she stated that she didn't always obtain pain readings. She didn't always get old medical records. She didn't always adequately track the medications. She should have known certain patients were addicted to drugs. She should have been suspicious. Her application stated that she would be much more vigilant and careful in prescribing controlled substances in the future. And you also have the testimony But what? But what? But the end result of her allegations. I didn't do it. I was taken in by cunning patients. It's not just that, Your Honor. There's also evidence that she acknowledges that she should have improved her practices, and we have the testimony of not just Dr. Hassman, but also Dr. Schneider, Dr. Pucca, Dr. Fleming, Dr. Jessup, who are all saying that she has learned from her experiences that she's changed her practice. She stated in great detail how her practice would change, how she would be conducting urine drug screenings, how she would use the four A's in evaluating all patients, how she learned from Dr. Schneider how to have a page at the beginning of a chart that lists all of the medications so that it's easier to monitor whether an early refill has been requested. A significant amount of the errors are coming from charting practices, which have been modified based on her mentoring relationship, which she entered into voluntarily with Dr. Schneider. The DA could have looked at her records from May 2002 to November 2002 to determine whether those changes had actually been made, but it decided that those were of little weight. But there is the evidence of how Dr. Hassman changed her practices once she had more education and more learning about the best way to analyze these very difficult patients. You know, these patients are presenting, for example, with WF. He comes in with an impairment rating from the VA from 1973. That's 30 years that he's been on pain medication from the time of Vietnam. This is something where Dr. Hassman is trying to treat somebody's pain. Even if somebody had prior drug addiction histories, it does not mean that they're not legitimately in pain. Given this experience, she stated that never again will she allow her practice to have such a high percentage of chronic pain patients, that she would ramp up slowly. And the proposal by the ALJ is that her practice would continue to be monitored by Dr. Schneider. She would continue to submit reports to the AMB. And it's also suggested that should the DEA want those reports as well, they could easily do so. Kennedy. How would you state the narrow legal question that is before this Court for decision? The narrow legal question is whether the DEA failed to consider the entire record, including evidence that is in favor of Dr. Hassman. Dr. Hassman here has not had her DEA registration for 11 years. If we look at the other DEA cases, quite a few of the ones where the registration was initially revoked or denied, in those decisions they said more favorable treatment may be considered if the applicant reapplies after a certain amount of time or they have a restricted registration. Is there a case, Counselor, that suggests I should look what they do in other cases so that I can determine what they do in this case? If a ---- I mean, as I understood it, I really can't look what they do in other cases to try to make it applicable in this case. All I can do in this case is look at what is it I've got to look at, did they have the substantial evidence to support it, and if they did, then where did you present the evidence that was necessary to support that she somehow now, having had a prima facie case established, that she came forth with evidence that says, I'm sorry about that, I did every bit of it, and I won't do it again? Your Honor, an agency's departure from precedent without explanation raises the specter that it's arbitrary and capricious. And here, when we're looking at the kinds of cases where a doctor's registration was denied or revoked, it's a different kind of case than what we're faced with here, where there's no evidence of intent. You know, you look at McKay, for example, where that doctor was, not only did not testify at his trial, but was trading drugs for sexual favors and who, after the oral argument in his case, ended up getting convicted of 40 counts of distributing controlled substances. That's not what we're talking about here. There's been 11 years Dr. Hausman has thoroughly revised her practice. Ninety-six percent of the patients that she had seen were continued on the same or a higher dosage of drugs, but none of this was considered by the DEA when making their decision. What is the relevance of keeping some of her patients on the same treatment? The other doctors, when they went on to other doctors, they kept them on the same treatment. If we're looking at what the standard of care is and whether Dr. Hausman was prescribing prescriptions without a legitimate medical purpose, the standard of care, if it's 96 percent the same and even 34 percent that had an increase in dosage, that's evidence that Dr. Hausman was giving legitimate medical prescriptions. Do we have any evidence in this record that those were the same people she inappropriately dealt with in the past? Yes, Your Honor. In fact, of the several of the patients which the DEA mentions in this record, including patients J.O., J.R., and M.H., were continued on the same dosage of opiates by later doctors. Some are and some aren't? Is that what your answer is? Some were inappropriately dealt with, but some weren't? No, Your Honor. For some patients, there's not records or those patients went on to do other things. But of the 85 patients that Dr. Schneider analyzed, 96 percent said that they were continued on the same or increased. Dr. Puca, who testified, who's nowhere mentioned in the DEA's decision, also testified of the 21 patients that he took over that Dr. Hausman's care was relevant and appropriate. This wasn't considered. Thank you. Thank you. May it please the Court. Anita Gay from the Department of Justice on behalf of the Drug Enforcement Administration. To answer Judge Schmidt's inquiry, you are correct that it is a narrow standard and that this Court does not substitute your judgment for that of the agency. The question is whether it was arbitrary and capricious, the sanction that was imposed by the DEA deputy administrator, and only if the agency considered factors that are not set out by Congress or did not have facts to support the findings of the deputy administrator. As this Court is aware, this is a very voluminous record. The analysis by the DEA deputy administrator is not so implausible as to be arbitrary and capricious. It is thorough. The deputy administrator addressed patient after patient where Dr. Hausman had neglected to do what was necessary according to her own expert and according to the government's expert, basic fundamental things in treating pain patients, evaluations, examinations, monitoring for signs of substance abuse, only issuing prescriptions and coordinating with other physicians who are treating those same patients to make sure that everyone is in coordination, ignoring evidence from family members, from pharmacies, that patients were addicted or abusing or diverting drugs, not using proper physical examinations. There were numerous ñ in every instance that was referred to by the deputy administrator, Dr. Hausman neglected to do at least one of these critical things when dealing with pain patients. She let the patients come in and request what they wanted. You could see from the transcripts of HT. He would come in and say, I eat the oxycodone or oxycontin-like candy. And when he explained to her that his mother had cautioned him not to take too much Tylenol, that he wanted the hydrocodone without the acetaminophen because he had hepatitis issues, and he said the Tylenol was bad, Dr. Hausman's response was, it's the other part that's the good part. She also ñ she never did accept responsibility. Yes, she did testify that she had straightened up her record keeping, that she had learned things, she had gone to continuing education. But when you look through the entire record, the deputy administrator was correct to find that one thing she never did, which is essential to protect the interests of the public, is she had to acknowledge wrongdoing. And the largest mistake that she made in the hearing was to not be credible. Well, didn't she say she was naive at the time, but she was no longer naive? Well, she does say that, but if you look, Judge Burgess, what she did throughout is she rationalized, she justified, she blamed others, she minimized, she excused her conduct. Take, for instance, her plea. She was indicted in federal court in Arizona. She pled guilty to four counts of felony involving controlled substances, accessory after the fact. Yet when she testified at the hearing and she's discussing two of the patients, there was a father and a son, F.L. and B.L. F.L. had received a prescription for OxyContin from Dr. Hassman, and he would receive this prescription through the mail. He died. She saw B.L. after his death and said, what happened to his latest shipment? Did you get it? And she knew that B.L. did, in fact, receive this shipment, but didn't give it over to her, didn't return it, so she knew B.L. was diverting, abusing, or misusing the controlled substances, but she continued to give him controlled substance prescriptions after that. And that in fact was a motive on her part in doing this. I mean, there's no allegations that she was receiving kickbacks or anything. No. And the deputy administrator does not have to find a motive, whether it's – I mean, she was making a living in pain management, she had an active practice, but there's no requirement under the CFR or under the standards for the deputy administrator. But with respect to that criminal conviction, when she got to the hearing, what she said specifically with respect to that factual basis, she said on page 2528, well, she stipulated to the facts because her attorney told her to do so. And then on page 2533, she again continued to minimize the prior convictions and said, well, you know, that district court judge accepted the facts and found me guilty of four felonies, but many judges would not accept or even recognize what I did as a crime. She never acknowledged that she did anything wrong with H.T., who was the FBI informant who recorded six meetings with her. She falsified the records six times that she was giving him physical examinations. She did not. In the transcript at page 2305, she said she never did anything wrong with him, said she was duped, you know, just deferred to him as, well, he's a three-time convicted felon. He's not credible. He's an FBI mole. Well, Dr. Hastman is a four-time convicted felon. She also testified that with respect to patients M.H., P.H., and A.V. there was a mother and two daughters. She had a prescription to M.H. The daughters went in to fill it. The pharmacist became suspicious, followed them outside, observed them, passed it into a car with a man in it. When he notified Dr. Hastman, she followed up on this and said that she counseled the three of them about the diversion. M.H. had explained, oh, that was my nephew. He has back problems and he can't afford the medication. Well, first of all, she couldn't have counseled the three of them at the time that she claimed she did because A.V. was in a hospital for a different matter, a different accident that she had had. So she falsified records. She testified with less than full candor to the administrative law judge, also with a consent agreement with the Arizona Medical Board. Again, she goes in and she says what she thinks is necessary to get through whatever the particular proceeding is. In the Arizona Medical Board, it is a consent agreement where she's stipulated to facts. She states in that agreement she failed to substantiate diagnoses with prior records. Yet when she testified at the administrative hearing before DEA, well, what she said in the transcript at page 1428 is when she agreed, she failed to substantiate. She never agreed, never said that she failed to obtain prior records. So she's still trying to split hairs, parse words. And then she also consented to the Arizona Medical Board. She may have overprescribed. But at the hearing, page 1427 said this is speculation. There's nothing specific in the Arizona Medical Board. So she never acknowledges I overprescribed. I allowed patients to divert. I allowed patients to abuse. I received notice from various people, and I did nothing to change that. It seems to me that the biggest objection to the first conclusion of the DEA is that she didn't consider all of the evidence or the whole record of the evidence. What about the findings of the Arizona Medical Board? Well, she did consider the consent agreement. However, what had happened was a diversion investigator went to the hearing before the Arizona Medical Board. That was diversion investigator Giannis was invited by someone in the Arizona Medical Board and observed Dr. Hassman's statement. Dr. Hassman made a motion in limine before the administrative law judge to exclude that, to say that it was improper for consideration for the hearing. The ALJ granted the motion in limine. That portion of Dr. Giannis's affidavit was excised. That portion was not considered. Just the written consent agreement noting that they had reviewed 23 patients and their stipulated findings. That is what was admitted into the record. And then she ---- What about Dr. Pucca? Dr. Pucca's testimony was it duplicated what Dr. Schneider said as far as what additional patients had received their follow-up treatment, that they had continued to be treated with opioids, that they had continued to be treated. I mean, there's nothing ---- the deputy administrator, first of all, as this Court is aware, and as my learned counsel who generously took this case pro bono after we had initially briefed this in 2010 is aware, it is a voluminous record. And the deputy administrator went through in painstaking detail and addressed the evidence. She did not specifically mention Dr. Pucca, but the points that were brought up by Dr. Pucca are addressed in there, and that is what is the significance of the follow-up treatment, and more particularly, what is the significance of her claim that the community needs pain management doctors, and ---- What about the affidavit of the pharmacist? The affidavit of the pharmacist that she had ---- I mean, there were ---- You got it. I could tell you were right on. What about that affidavit? Well, what the deputy administrator did do, see, they cite to the Iyer case out of the Eleventh Circuit, and Iyer was sent back because there had been three undercover prescriptions given to three undercover patients by Dr. Iyer. But the DEA did not specifically address, well, what about 12 other patients where Dr. Iyer legitimately prescribed? And it was sent back, and the deputy administrator and Dr. Iyer ultimately reached a settlement, and Dr. Iyer had a ---- had a specifically acknowledged wrongdoing and received a restricted license. But that is not what happened here. Here the deputy administrator did address, okay, what about the legitimate prescribing? What about the community's needs? What about the other patients that she treated appropriately? And gave the appropriate weight to that. Counsel has not identified any specific fact or any specific good deed of Dr. Hassman that was not considered by the deputy administrator. But how would you define the legal questions before this panel for this? The legal question before this panel is a very narrow and very deferential question, and that is whether there was substantial evidence, whether it was reasonable to find that there is substantial evidence to support the conclusions of the deputy administrator, and whether what the deputy administrator did was arbitrary and capricious. Is it consistent with agency precedent? And, yes, I would ask this Court to look to prior agency precedent, and the deputy administrator did do that. You'll see at the end when she's discussing the appropriate sanction, she talks about agency precedent, and so the narrow issue for the arbitrary and capricious question is, is this consistent with agency precedent? Is this a reasonable remedy that the agency has imposed? So it is very deferential and a very narrow, very narrow inquiry for this Court. If the Court has no other questions, I will thank you very much for your time. And I would ask you. Ms. Doss, I would want to say, or Foss, sorry. I want to say thank you very much for taking this as a pro bono counsel. We are so appreciative of good young attorneys who will do that, very appreciative of you doing that in this particular case and giving it such a heavy effort. We're so thankful. Thank you very much. I think we'll consider this case submitted. This is Case 10-70684, Austin v. EPA, is now submitted.
judges: Burgess, Farris, Smith